UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SALLY A. MAHONEY,
    Plaintiff,

    v.
                               CIVIL ACTION NO.
                               08-10879-MBB

LOUISE MORGAN and
BREWSTER VETERINARY HOSPITAL,
    Defendants.

**MEMORANDUM AND ORDER RE:
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY # 48); PLAINTIFF'S MOTION TO ATTACH
REAL ESTATE AND ALL REAL PROPERTY INTERESTS
BELONGING TO DEFENDANT LOUISE MORGAN
(DOCKET ENTRY # 46)**

**September 16, 2010**

**BOWLER, U.S.M.J.**

      Pending before this court is a motion for summary judgment
pursuant to Rule 56, Fed. R. Civ. P. ("Rule 56"), filed by
defendants Louise Morgan, V.M.D. ("Morgan") and Brewster
Veterinary Hospital ("BVH") (collectively "defendants"). (Docket
Entry # 48). Also pending is a motion to attach Morgan's
interest in certain real property pursuant to Rule 4.1, Mass. R.
Civ. P. ("Rule 4.1"), filed by plaintiff Sally A. Mahoney
("plaintiff"). (Docket Entry # 46). In an amended complaint,
plaintiff claims that defendants violated the Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12112 (b)(5)(B). (Docket
Entry # 41).

PROCEDURAL BACKGROUND

Plaintiff initially filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") and the United States Equal Employment Opportunity Commission ("EEOC") against defendants alleging employment discrimination in January 2005. (Docket Entry # 19, Att. # 2).  The MCAD found a lack of probable cause in the allegations and dismissed the complaint in August 2007.  (Docket Entry # 19, Att. # 2).  The EEOC later adopted the MCAD's findings.  (Docket Entry # 19, Att. # 2).

Plaintiff filed the original complaint in this court for relief under the ADA and chapter 151B of the Massachusetts General Laws ("chapter 151B") against defendants on May 16, 2008. (Docket Entry # 1).  In December 2008, defendants moved to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., arguing that defendants are not covered employers under the ADA and that the chapter 151B claim is no longer viable because of that statute's limitations period.  (Docket Entry # 18).  In April 2009, this court allowed the dismissal of the chapter 151B claim but gave plaintiff the opportunity to amend the complaint in lieu of a dismissal of the ADA claim.  (Docket Entry # 39). In May 2009, plaintiff filed a motion to amend and a proposed amended complaint with the ADA claim.  (Docket Entry # 41).  This

court allowed the amendment in June 2009.  (Docket Entry # 39).

Plaintiff moves to attach Morgan's interest in real estate located in Brewster, Massachusetts at 56 Underpass Road, 893 Slough Road and 41 Cherrywood Lane pursuant to Rule 4.1 on September 9, 2009.  (Docket Entry # 46).  Defendants oppose the motion (Docket Entry # 47) and on October 9, 2009, filed the motion for summary judgment.  (Docket Entry # 48).  Plaintiff opposes summary judgment.  (Docket Entry # 55).


### STANDARD OF REVIEW

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 12 (1st Cir. 2007).  It is appropriate when the summary judgment record shows "there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  American Steel Erectors, Inc. v. Local Union No. 7, International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008).  "A fact is material if it carries with it the potential

to affect the outcome of the suit under the applicable law."   Id.

Facts are viewed in favor of the non-movant, i.e.,
plaintiff.   Noonan v. Staples, Inc., 556 F.3d 20, 23 (1st Cir.
2009).   "Where, as here, the nonmovant has the burden of proof
and the evidence on one or more of the critical issues in the
case is not significantly probative, summary judgment may be
granted."   Davila, 498 F.3d at 12 (internal quotation marks,
citation and ellipses omitted); accord Clifford v. Barnhart, 449
F.3d 276, 280 (1st Cir. 2006) (if moving party makes preliminary
showing, nonmoving party must "produce specific facts, in
suitable evidentiary form, to establish the presence of a
trialworthy issue" with respect to each element on which he
"would bear the burden of proof at trial") (internal quotation
marks and citations omitted).

In order for defendants to succeed on the motion for summary
judgment, they must show that no genuine issue exists with regard
to any of the facts that could change the outcome of the case.
See American Steel Workers Inc. v. Local Union No. 7, 536 F.3d at
75.   Plaintiff may defeat summary judgment if she is able to
dispute with supporting evidence any of the material facts.   Id.

Under Rule 4.1, property may be attached "upon a finding by
the court that there is a reasonable likelihood that the
plaintiff will recover judgment, including interest and costs, in

an amount equal to or greater than the amount of the attachment
over and above any liability insurance" in possession of the
defendants.  United States Fidelity & Guaranty Co. v. Arch
Insurance Co., 578 F.3d 45, 49 (1st Cir. 2009) (internal
quotation marks and citations omitted); see Rule 4.1, Mass. R.
Civ. P.  In order for plaintiff to meet her burden here, her
affidavits and other supporting evidence must show a reasonable
likelihood of success that she will recover judgment.  See
Braintree Laboratories, Inc. V. Citigroup, 671 F.Supp.2d 202, 209
(D.Mass. 2009).  The moving party is also required to submit an
affidavit which provides support for the motion for attachment.
See Rule 4.1(c), Mass. R. Civ. P.


                          FACTUAL BACKGROUND

     Morgan is a resident of Brewster, Massachusetts.  (Docket
Entry # 41, ¶ 2).  She opened BVH in 1992 and operates it as a
sole proprietorship.  (Docket Entry # 51, ¶ 3).  Plaintiff worked
as a veterinarian for BVH from May 1997 to March 2004.  (Docket
Entry # 46, Att. # 1, ¶ 2).

     At the time of her hiring, plaintiff informed Morgan that
she had multiple sclerosis and preferred a part time schedule.
(Docket Entry # 41, ¶ 11).  The multiple sclerosis prevents
plaintiff from working a full time schedule.  (Docket Entry # 46,

Att. # 1, ¶ 6).  Plaintiff worked most Saturdays throughout her
employment (Docket Entry # 55, Att. # 2) as well as some morning
hours from January 2004 until her termination in March 2004.
(Docket Entry # 44, ¶ 8).  Morgan asked plaintiff to cover some
of Morgan's patients while Morgan was on vacation in January
2004.  (Docket Entry # 44, ¶ 8).

Multiple sclerosis symptoms are exacerbated by very warm
temperatures but can be alleviated by "reducing the ambient
temperature."  (Docket Entry # 46, Att. # 1, ¶ 5).  Plaintiff
worked in examination rooms without air conditioning during her
employment at BVH.  (Docket Entry # 46, Att. # 1, ¶ 7).  In the
summer, plaintiff's multiple sclerosis symptoms increased due to
the warm temperatures in the rooms without air conditioning.
(Docket Entry # 46, Att. # 1, ¶ 8).  Plaintiff repeatedly
approached Morgan to install air conditioning in the examination
rooms but her requests were denied.  (Docket Entry # 44, ¶ 13).
Plaintiff further offered to provide her own air conditioner
which Morgan also refused.  (Docket Entry # 46, Att. 1, ¶ 9).

In March 2004, Morgan terminated plaintiff's employment as a
part time veterinarian at BVH.  (Docket Entry # 46, Att. #1, ¶
12).  Morgan also terminated another part time veterinarian at
this time.  (Docket Entry # 47).  The other part time
veterinarian had no known disability.  (Docket Entry # 47).

Shortly before plaintiff's termination, Morgan hired Dr. Cloherty ("Cloherty") as a full time veterinarian who could perform surgeries.  (Docket Entry # 47, Att. # 2).  Morgan also hired Dr. Heidi Howell ("Howell") as a part time veterinarian who was also able to perform surgeries.  (Docket Entry # 47, Att. # 2).  Plaintiff told Morgan when she was hired that she would not perform surgeries.  (Docket Entry # 47).  Morgan attests that plaintiff's termination was a business decision influenced by Morgan's view that plaintiff had poor attitude and worked slowly.  (Docket Entry # 51, ¶ 20).  Plaintiff, in contrast, attests that her termination was an act of retaliation based on her disability.  (Docket Entry # 47, Att. # 2).

Morgan also hired Kelly McLaughlin ("McLaughlin") to clean BVH at night.  (Docket Entry # 51, ¶ 16).  Morgan did not set McLaughlin's schedule but instead came to an agreement that McLaughlin "simply  . . .  would clean the place up."  (Docket Entry # 51, ¶ 16).  McLaughlin provided her own crew members and cleaning supplies to clean BVH.  (Docket Entry # 51, ¶ 16).  The cleaning crew at BVH varied depending on the night, with McLaughlin absent on some occasions.  (Docket Entry # 51, ¶ 16).  Morgan was not aware how much time the cleaning crew spent at BVH each night and sometimes did not see the cleaners at BVH.  (Docket Entry # 51, ¶ 16).  Morgan agreed to pay McLaughlin as an

independent contractor and did not make any employment tax withholdings from McLaughlin or her crew.  (Docket Entry # 51, ¶ 16).  Morgan also did not provide McLaughlin or her crew with any other benefits.  (Docket Entry # 51, ¶ 16).

According to plaintiff's deposition testimony, plaintiff did not know how many cleaners were responsible for cleaning BVH. (Docket Entry # 47, Att. # 3, p. 58).  Plaintiff testified that she "didn't see [the cleaners] because they worked at night." (Docket Entry # 47, Att. # 3).  Plaintiff also did not know the gender of the cleaners nor did she know whether or not the cleaning crew consisted of more than one person.  (Docket Entry # 47, Att. # 3).

Jan Margeson ("Margeson"), Morgan's husband, works as a fisherman in the summertime and has performed various tasks at BVH.  (Docket Entry # 47, Att. # 3, ¶ 6; Docket Entry # 51, ¶ 11).  Plaintiff recalled three instances of Margeson working at BVH, including moving things, changing the lights and using a hammer.  (Docket Entry # 47, Att. # 3).  Plaintiff was able to recall generally that she had seen Margeson working at BVH on other occasions but was unable to point to a specific date or task.  (Docket Entry # 47, Att. # 3).

Morgan attests that Margeson was performing these tasks "simply as [her] husband" and was not paid by BVH.  (Docket Entry

8

# 51, ¶ 11).  Although a volunteer, he did perform the tasks on
the premises.  (Docket Entry # 51, ¶ 11).  Morgan also attests
that Margeson is covered as her husband on her health insurance
obtained through BVH.  (Docket Entry # 51, ¶ 11).  Drawing
reasonable inferences in plaintiff's favor, BVH provided
Margeson's health coverage and he performed the tasks at BVH
during the winter, including January, February and March of 2004,
insofar as he works as a fisherman in the summer.

Kelly Margeson and Jenny Margeson are Margeson's daughters
and Morgan's stepdaughters.  (Docket Entry # 51, ¶ 15).  Both
Kelly and Jenny Margeson have worked at BVH at various intervals
and for varying lengths of time.  (Docket Entry # 51, ¶ 15).
Kelly Margeson was born in 1989 and worked at BVH during school
breaks.  (Docket Entry # 51, ¶ 15).  Plaintiff avers that Kelly
and Jenny Margeson worked at BVH at other times than those listed
on the payroll.  (Docket Entry # 55, Att. # 2).  Morgan attests
that Kelly Margeson only worked at BVH for four weeks in the
third quarter of 2003 and did not work at BVH in 2004.  (Docket
Entry # 51, ¶ 15).  Plaintiff attests instead that she recalls
seeing Kelly Margeson working at BVH as early as 2001.  (Docket
Entry # 55, Att. # 2).  A reasonable finder of fact could
therefore find that Kelly Margeson worked at BVH in the first and
third quarters of 2004.

9

Plaintiff further recalls that Kelly Margeson worked at BVH "about 75% of the Saturdays when [plaintiff] worked there and other days during the week."  (Docket Entry # 55, Att. # 2). Much like plaintiff's recollection of Margeson's work at BVH, however, plaintiff cannot describe any specific quarter during which she is certain Kelly Margeson was working at BVH.  (Docket Entry # 47, Att. # 3).

Plaintiff also attests that although Kelly Margeson worked at BVH during 2003's third quarter, she was not listed in the relevant filing with the Massachusetts Division of Employment and Training ("DET").  (Docket Entry # 55, Att. # 1, ¶ 8).  Though Kelly Margeson is not listed on the form with the DET heading, labeled the "Third Quarter 2003 Contribution Report," this form does not provide for a list of employees.  (Docket Entry # 51, Ex. 14).  The form labeled "Employer's Quarterly Report of Wages Paid" ("Form WR-1") with a Massachusetts Department of Revenue heading does provide for a list of employees.  (Docket Entry # 51, Ex. 14).  Kelly Margeson is listed as an employee on this form for 2003's third quarter with her quarterly wages listed as $350.39.  (Docket Entry # 51, Ex. 14).  Morgan testified to Kelly Margeson being 13 years old at this point in time.  (Docket Entry # 51, ¶ 15).

Jenny Margeson was born in 1983 and sometimes worked at BVH.

(Docket Entry # 51, ¶ 15).  Morgan attests that Jenny Margeson
did not work at BVH in 2003 but did work at BVH for five weeks in
2004's fourth quarter at which point she would be approximately
21 years old and in college.  (Docket Entry # 51, ¶ 15).  Jenny
Margeson's employee status is reflected on the Form WR-1 for the
fourth quarter of 2004 with her wages listed as $922.50.  (Docket
Entry # 51, Ex. 14).  Plaintiff disputes Morgan's claim by
averring that Jenny Margeson worked at BVH each year from 2000
through 2004.  (Docket Entry # 55, Att. # 1, ¶ 44).  Plaintiff
testified during her deposition that she "definitely remember[ed]
[Jenny Margeson] worked [at BVH]" but again could not specify
which quarters and how often Jenny Margeson worked.  (Docket
Entry # 27, Ex. A, p. 44).

     The record does not specifically itemize the tasks performed
by Kelly and Jenny Margeson in the first and third quarters of
2004.  Plaintiff testified, however, that high school age
students performed volunteer work at BVH during the relevant time
period consisting of feeding the animals, exercising the animals,
cleaning the cages and food bowls as well as cleaning the
backyard and floors.  (Docket Entry # 27, Ex. A, p. 49-50).
Drawing reasonable inferences in plaintiff's favor, a jury could
find that Kelly and Jenny Margeson performed these or similar
tasks at BVH.  Such tasks fall within the realm of BVH's regular

11

business of providing veterinary services.

Morgan hired Joan Goffi, V.M.D. ("Goffi") to work at BVH part time.  (Docket Entry # 51, ¶ 9).  Goffi began working at BVH in 2002 and was paid as an employee with taxes withheld.[1] (Docket Entry # 51, ¶ 9).  Goffi requested to be paid as an independent contractor shortly after she began work at BVH. (Docket Entry # 51, ¶ 9).  As reflected in BVH's payroll registers, BVH started paying Goffi as an independent contractor in the second quarter of 2003.  (Docket Entry # 51, Ex. 12). Morgan attests that Goffi was an independent contractor who set her own hours and worked independently.  (Docket Entry # 51, ¶ 9).  Morgan testified in her deposition that Goffi worked at BVH one day per week and occasionally performed relief work.  (Docket Entry # 47, Att. # 2, p. 61).

Plaintiff avers instead that Morgan set Goffi's hours and that Goffi's duties did not change when she went from employee to independent contractor status.  (Docket Entry # 55, Att. # 1, ¶ 36).  Goffi used BVH equipment and, drawing reasonable inferences in plaintiff's favor, performed veterinary work on the premises of BVH.

Morgan also hired Karen Hickey, V.M.D. ("Hickey") to work as

---

[1]  There is little dispute, if any, that Goffi worked at BVH during the first quarter of 2004.

a part time veterinarian at BVH.  (Docket Entry # 52, Att. # 2).

Hickey started a full time house call business named Veterinary

Home Care Services in 1996.  (Docket Entry # 52, Att. # 2).

Veterinary Home Care Services had its own pharmacy and allowed

Hickey to treat pets in their homes but did not enable Hickey to

perform surgeries.  (Docket Entry # 52, Att. # 2).  Hickey and

Morgan agreed that Hickey "would rent surgical space and utilize

[Morgan's] hospital facility to give full care to [Hickey's]

house call patients."  (Docket Entry # 52, Att. # 2).  Hickey's

surgery patients came to BVH for operations.  (Docket Entry # 27,

Ex. A, p. 72).  Hickey later agreed to work one day per week and

coverage days at BVH treating BVH patients and was compensated by

BVH.  (Docket Entry # 52, Att. # 2).

From 1999 to 2004, Hickey worked approximately one day a

week at BVH.  (Docket Entry # 52, Att. # 2).  She also "filled

in" if the need arose.  (Docket Entry # 52, Att. # 2, p. 29).

Sixty percent of Hickey's patients were BVH patients whereas only

40% of Hickey's patients arose from her Veterinary Home Care

Services business.  (Docket Entry # 52, Att. # 2).  Thus, a

reasonable jury could find that Hickey worked on the premises

performing veterinary services at BVH in the first and third

quarters of 2004.  Both Morgan and Hickey aver that Hickey is an

independent contractor.  (Docket Entry # 51, ¶ 9; Docket Entry #

52, Att. # 2).

Hickey is paid by BVH as an independent contractor in the sense that she receives no benefits and BVH makes no withholdings from her paychecks. (Docket Entry # 51, ¶ 9). Morgan attests that Hickey not only works "independently and without supervision" but also sets her own hours. (Docket Entry # 51, ¶ 9). Plaintiff, however, attests that Hickey did not set her own hours and that Morgan was responsible for all scheduling. (Docket Entry # 55, Att. # 1, ¶ 34). Plaintiff avers that she knew "Hickey 'preferred' to be paid as an independent contractor" but that plaintiff and Hickey "swapped" work days and patients beginning in 1999. (Docket Entry # 55, Att. # 2).

Morgan hired Heidi Howell, V.M.D. ("Howell") during the week of March 7, 2004, to work as a part time veterinarian at BVH. (Docket Entry # 47, Att. # 2, p. 76). Howell was willing and able to perform surgeries for BVH patients. (Docket Entry # 47, Att. # 2, p. 76). Howell was hired in the same week that plaintiff was terminated. (Docket Entry # 47, Att. # 2, p. 80). Morgan hired Howell on a "trial" basis. (Docket Entry # 47, Att. # 2, p. 80). Howell was first paid as an independent contractor for her work at BVH in March of 2004 when she earned $1,075. (Docket Entry # 51, ¶ 19). Howell was paid as an employee with

14

taxes withheld and listed on quarterly DET filings beginning in April 2004. (Docket Entry # 51, ¶ 19). Howell worked on the premises at BVH using BVH equipment and performing veterinary services in the last three weeks of March 2004. (Docket Entry # 51, ¶ 19). Once paid as an employee, she also worked at BVH throughout the second and, more importantly, the third quarter of 2004.

<u>DISCUSSION</u>

I. <u>Summary Judgment Motion (Docket Entry # 48)</u>

In seeking summary judgment, defendants argue that they do not meet the ADA's definition of an "employer." More specifically, defendants submit that they did not employ the required number of employees to qualify as an employer under the ADA.

The threshold number of employees to qualify as an employer under the ADA is "15 or more employees for each working day in each of 20 or more weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A). An "employee" is defined as "an individual employed by an employer." 42 U.S.C. § 12111(4). As noted by the Supreme Court in <u>Clackamas Gastroenterology Associates, P. C. v. Wells</u>, 538 U.S. 440 (2003), the employee

15

definition "is completely circular and explains nothing." Id. at 444 (internal quotation marks and citations omitted). The Court ascertained, however, that "Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." Id. at 444 (internal quotation marks and citations omitted); see also Lopez v. Massachusetts, 588 F.3d 69, 83-84 (1st Cir. 2009) (analyzing identical definition of "employee" under Title VII, citing Clackamas and articulating same "common law test").

The First Circuit in Lopez endorsed "the common law test" in order to define employees and employers. Lopez v. Massachusetts, 588 F.3d at 83 (examining Title VII's definitions of employee while noting that other statutes use similar definitions). The common law test consists of 13 non-exclusive factors first listed in Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989) ("Reid"), to distinguish an employment relationship from other work relationships. Lopez v. Massachusetts, 588 F.3d at 83. Founded on common law agency principles, the factors ("Reid factors") include but are not limited to:

> The hiring party's right to control the manner and means by
> which the product is accomplished[;] . . . the skill
> required; the source of the . . . tools; the location of the
> work; . . . the extent of the hired party's discretion over
> when and how long to work; the method of payment; . . .
> whether the work is part of the regular business of the

16

> hiring party; . . . the provision of employee benefits; and
> the tax treatment of the hired party.

Id. at 83-84 n. 14 (internal quotation marks and citations

omitted).

The Clackamas Court found the control element especially

helpful in applying the common law test.  Clackamas

Gastroenterology Assoc. v. Wells, 538 U.S. at 440.  The First

Circuit in Lopez likewise endorsed the focus on control as "the

'principal guidepost.'"  Lopez v. Massachusetts, 588 F.3d at 84-

85 (quoting Clackamas, 538 U.S. at 448).  Both the Clackamas and

Lopez decisions also rely on similar factors listed in the Equal

Opportunity Employment Commission's Compliance Manual ("the EEOC

guideline").  See Clackamas Gastroenterology Assoc. v. Wells, 538

U.S. at 448; Lopez v. Massachusetts, 588 F.3d at 84-85.  The EEOC

guideline includes but is not limited to the following factors to

determine if an employment relationship exists:

> [T]he employer has the right to control when, where, and how
> the worker performs the job; . . . the work is performed on
> the employer's premises; there is a continuing relationship
> between the worker and the employer; the employer sets the
> hours of work and the duration of the job; . . . the worker
> does not hire and pay assistants; the work performed by the
> worker is part of the regular business of the employer; . .
> . the worker is not engaged is his/her own distinct
> occupation or business; the employer provides the worker
> with benefits . . . ; the worker is considered an employee
> of the employer for tax purposes; the employer can discharge
> the worker; and the worker and the employer believe they are
> creating an employer-employee relationship.

Lopez v. Massachusetts, 588 F.3d at 85 (internal quotation marks and citations omitted).  It is appropriate to view these non-exhaustive factors "in light of the totality of the circumstances based on the parties' relationship."  Id.

The emphasis on viewing the employment relationship as a whole is not unique.  See Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323 (1992) (defining "employee" under ERISA).  "Since the common-law test contains no shorthand formula or magic phrase that can be applied to find the answer, all of the incidents of the relationship must be assessed and weighed with no one factor being decisive."  Id.  Examining the totality of the circumstances and the aforementioned factors, this court turns to whether the individuals in question are employees.

A.  McLaughlin

The parties dispute whether McLaughlin was an independent contractor or an employee of BVH.  Examining the relevant factors in the context of the circumstances of the relationship, McLaughlin and her crew performed work on BVH premises, had a continuing relationship with BVH and were subject to termination by Morgan.  (Docket Entry # 51).  These circumstances implicate the Reid and EEOC guideline factors of "the location of the work," "the duration of the relationship between the parties" and

"employer can discharge the worker." Lopez v. Massachusetts, 588 F.3d at 84-85 n.14. These factors weigh in favor of characterizing McLaughlin as an employee of BVH.

Balanced against this evidence of McLaughlin's employee status is Morgan's testimony that Morgan did not pay taxes, insurance or benefits for McLaughlin or her crew. (Docket Entry # 51, ¶ 16). This fact is relevant to the Reid and EEOC guideline factors of "the provision of employee benefits," "the tax treatment of the hired party" and that "the worker is considered an employee of the employer for tax purposes." Lopez v. Massachusetts, 588 F.3d at 84-85. Paying individuals without benefits and without tax withholdings weighs in favor of characterizing McLaughlin as an independent contractor rather than an employee. See Kakides v. King Davis Agency, Inc., 283 F.Supp.2d at 416-417 (finding lack of insurance, benefits and not withholding taxes as evidence that the plaintiff was an independent contractor).

The other cleaners were members of a service run by McLaughlin and hired at her discretion. (Docket Entry # 51). A "worker [who] does not hire and pay assistants" and "is not engaged is his/her own distinct occupation or business" more likely has an independent contractor relationship with his or her

employer.   See Lopez v. Massachusetts, 588 F.3d at 84-85.
McLaughlin's cleaning company is a distinct business from BVH.
The cleaning crew set its own hours, was not always accompanied
by McLaughlin and usually performed its work without Morgan's
direct supervision.   (Docket Entry # 51).   These facts implicate
the factors of "the extent of the hired party's discretion over
when and how long to work" and the employer setting "the hours of
work and the duration of the job" and both weigh in favor
independent contractor status.   See Lopez v. Massachusetts, 588
F.3d at 84-85; see, e.g., Kakides v. King Davis Agency, Inc., 283
F.Supp.2d at 416-417 (setting one's own schedule considered
evidence of independent contractor status); cf. Boire v.
Greyhound Co., 376 U.S. 473, 481 (1964) (finding the fact that
Greyhound set the cleaners' schedules and directed cleaners' work
was indicative of cleaners' employee status).

McLaughlin also provided her own tools (Docket Entry # 51).
See Lopez v. Massachusetts, 588 F.3d at 84 ("the source of the .
. . tools").   Providing one's own supplies weighs in favor of a
finding that McLaughlin is not an employee of BVH.   Cf. Roberts
v. Delta Air Lines, Inc., 599 F.3d 73, 78 (1st Cir. 2010)
(finding that all the necessary job equipment for the alleged
employee belonged to Delta thereby evidencing Delta's control and
an employer/employee relationship).   Examining the totality of

the circumstances, including the foregoing facts and relevant factors, a reasonable jury could not find that McLaughlin was an employee of BVH.

B. Margeson

Margeson performed odd tasks voluntarily at BVH and did not receive payment. (Docket Entry # 51). His work (such as moving things and fixing lighting) at BVH is outside of "the regular business of the employer," BVH, which provides veterinary services. See Lopez v. Massachusetts, 588 F.3d at 85. A reasonable jury could find that he performed these tasks on the premises at BVH during January, February and March of 2004. Morgan does not appear to have a supervisory role in Margeson's work. (Docket Entry # 51).

The lack of evidence of payment for Margeson's work is not necessarily a bar to a determination of employee status because some volunteers are covered by the ADA. Equal Employment Opportunities Commission New Compliance Manual, ¶ 7110, § 2-III(A)(1)(c) (2009). A volunteer may be covered by the ADA if he is receiving benefits. Id. As previously noted, Margeson is covered as Morgan's spouse under the health insurance she receives through BVH. Examining these circumstances and the factors in total, a reasonable jury could find that Margeson

21

qualifies as an employee of BVH in the first quarter of 2004.

C.  Kelly Margeson and Jenny Margeson

Kelly Margeson was paid as an employee for four weeks of work at BVH in the third quarter of 2003.  (Docket Entry # 51, Ex. 14).  Jenny Margeson was paid as an employee for five weeks of work at BVH in the fourth quarter of 2004.  (Docket Entry # 51, Ex. 15).  Both Kelly and Jenny Margeson performed work on the premises of BVH.  See Lopez v. Massachusetts, 588 F.3d at 84-85 (noting "location of work" factor); see also Boire v. Greyhound Co., 376 U.S. at 474 (finding the fact that cleaners worked in Greyhound terminals was indicative of cleaners' employee status).  Paid with taxes withheld, BVH listed both individuals as employees on a Form WR-1 (Docket Entry # 51, Ex. 13 & 14).  See generally Lopez v. Massachusetts, 588 F.3d at 84-85 (noting factor of whether "worker is considered an employee of the employer for tax purposes").  They also performed work consisting of BVH's regular business providing veterinary services.  See Lopez v. Massachusetts, 588 F.3d at 84-85 (noting factor of whether "work performed by the worker is part of the regular business of the employer").  Genuine issues of material fact therefore exist which allow a reasonable jury to classify Kelly and Jenny Margeson as employees of BVH during the first and third

quarters of 2004.

D.  Goffi

Goffi was paid as an employee for the first three months that she was working at BVH.  (Docket Entry # 51).  Goffi requested to be paid as an independent contractor and was then paid without benefits, insurance or taxes withheld.  (Docket Entry # 51).  This method of payment is relevant to certain factors that weigh in favor of an independent contractor status.  Lopez v. Massachusetts, 588 F.3d at 84-85 ("method of payment" and "tax purposes").  Appearance on the payroll, however, is not necessarily dispositive of employee status because it is the "existence of an employment relationship" that is "critical."  De Jesus v. LTT Card Services, Inc., 474 F.3d 16, 22 (1st Cir. 2007) (finding that an individual may appear on the payroll but not be a traditional employee under agency principles).

Goffi worked at BVH, used BVH equipment and performed the kind of work as a veterinarian that constitutes BVH's regular course of business.  (Docket Entry # 51).  These facts weigh in favor of finding Goffi an employee of BVH.  See Lopez v. Massachusetts, 588 F.3d at 84-85 (noting factors including "location," "source of the . . . tools" and "regular business of the employer").

Plaintiff avers that Goffi and Goffi's work was under Morgan's control.  (Docket Entry # 55, Att. # 1).  On the other hand, Morgan attests that Goffi set her own hours and worked independently.  (Docket Entry # 51).  Viewing all of the relevant factors in the context of the circumstances and construing the facts in plaintiff's favor, a genuine issue of material fact exists as to whether Goffi was a BVH employee in the first quarter of 2004.

E.  Hickey

Hickey's method of payment weighs against a finding of employee status inasmuch as BVH paid her as an independent contractor with no benefits, insurance or taxes withheld (Docket Entry # 51).  See Lopez v. Massachusetts, 588 F.3d at 84-85 (noting "method of payment" as relevant factor and whether "worker is considered an employee of the employer for tax purposes").  Morgan also testified that Hickey sets her own hours and works without supervision.  Although Hickey's house call Veterinary Home Care Services business and its pharmacy weigh in favor of independent contractor status, the bulk of her patients were BVH patients.  See Lopez v. Massachusetts, 588 F.3d at 85 (noting factor of whether "worker is . . . engaged in his/her own distinct occupation or business").  On the other hand, a jury

24

could find that she worked at BVH on a regular basis in 2004 one day a week and filled in when needed.  She also used BVH equipment.  These facts weigh in favor of classifying Hickey as a BVH employee.  See Lopez v. Massachusetts, 588 F.3d at 84-85 n.14 ("location" and "source of the . . . tools").  Further weighing in favor of Hickey's employee status is that a jury could easily find that Hickey performed services, i.e., veterinarian work, that constitute the regular business of BVH.  See Lopez v. Massachusetts, 588 F.3d at 84-85 n.14 (noting factor of whether work is "part of the regular business of the employer").

Plaintiff further attests that Hickey not only was under Morgan's control, but also regularly "swapped" duties with plaintiff.  (Docket Entry # 51, Docket Entry # 55, Att. # 1).  Examining the totality of the circumstances and facts while considering the relevant factors, a reasonable jury could find that Hickey is an employee of BVH.

F.  Howell

Howell began working as a veterinarian at BVH in March 2004.  (Docket Entry # 51).  Howell was paid as an independent contractor for March 2004 and was placed on the payroll and paid as an employee starting in April 2004.  (Docket Entry # 51).  Her appearance on the payroll is not always conclusive evidence of

25

employee status but nonetheless may provide evidence of an
employment relationship.  See De Jesus v. LTT, 474 F.3d at 22;
Lopez v. Massachusetts, 588 F.3d at 84-85.  She also performed
veterinary services on the premises using BVH equipment.

Viewing the facts in plaintiff's favor, a genuine issue of
material fact exists as to whether under the totality of the
circumstances and considering the relevant factors Howell was an
employee of BVH in March 2004.

A jury could also readily classify her as a BVH employee in
the third quarter of 2004.  BVH considered her an employee for
tax purposes by that time and she continued working on the
premises as a part time veterinarian.  See Lopez v.
Massachusetts, 588 F.3d at 84-85 & n.14 (noting factors including
"location," "regular business of the employer," "method of
payment" and "considered an employee of the employer for tax
purposes").

G.  Calculating the Total Number of Employees

The ADA minimum requirement for a business to be considered
an employer is that the business employs 15 or more persons in 20
or more weeks in a calendar year.  See 42 U.S.C. § 12111(5)(A).
A reasonable jury could find that Goffi, Hickey, Margeson, Kelly
Margeson and Jenny Margeson were BVH employees in the first

quarter of 2004.[2]  When these individuals are added to the list of employees on the BVH filings, the total number of employees is 16 in January 2004, 15 in February 2004 and 16 in March 2004.

A reasonable jury could also find that Hickey, Kelly Margeson and Jenny Margeson were BVH employees in the third quarter of 2004.  When these individuals are added to the list of employees on the relevant BVH filings, the total number of BVH employees is 15 in July 2004 and 16 in August 2004.

A reasonable jury could therefore find that BVH employed 15 or more people in the months of January, February, March, July and August 2004.  This meets the ADA minimum requirement of 15 or more persons employed over 20 weeks in a calendar year, thus, a reasonable jury could characterize BVH as an employer for 2004. Given the genuine issues of material fact as to the presence of 15 (or more) employees employed at BVH in 2004, summary judgment is not appropriate.

II.  <u>Motion for Attachment (Docket Entry # 46)</u>

As previously explained, property may be attached "upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment . . . in an amount equal to

---

[2]  A reasonable jury could also find that Howell was an employee during the last three weeks of March 2004.

or greater than the amount of the attachment over and above any liability insurance" that is available for the defendant to use to satisfy the judgment.  United States Fidelity & Guaranty Co. v. Arch Ins. Co., 578 F.3d at 49 (internal quotation marks and citations omitted).  "[T]he central question on [a] motion for approval of attachment is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount."  United States Fidelity & Guaranty Co. v. Arch Ins. Co., 578 F.3d at 52 (internal quotation marks and citations omitted). Plaintiff bears the burden of showing a reasonable likelihood of success on the merits of her claim.  See Greenbriar Companies, Inc. v. Springfield Terminal Railway, 477 F.Supp.2d 314, 317 (D.Mass. 2007) (finding that the plaintiff must demonstrate that attachment is appropriate).  She must also submit an affidavit as supporting evidence that she has a "reasonable likelihood of success on the merits."  Id.; see Rule 4.1, Mass. R. Civ. P.

Plaintiff filed an affidavit along with the motion for an attachment albeit with no other supporting documents.  (Docket Entry # 46, Att. # 1).  This affidavit alone, which mainly addresses plaintiff's attempts to have air conditioning installed at BVH, is not enough to meet plaintiff's burden of showing a reasonable likelihood of success.  Plaintiff simply attests that she "believe[s] . . . Morgan wrongfully terminated [plaintiff's]

employment." (Docket Entry # 46, Att. # 1).

The findings made by the MCAD and the EEOC provide indications that plaintiff may not be likely to prevail at trial. EEOC determinations may constitute significant evidence in the trial court. <u>Hilton v. Wyman-Gordon Co.</u>, 624 F.2d 379, 383 (1st Cir. 1980) (noting that EEOC findings may be significant evidence depending on individual cases). Findings made by the relevant state agency, in this instance the MCAD, and the EEOC provide relevant evidence with respect to a reasonable likelihood of success. <u>See</u> <u>Blizard v. Fielding</u>, 572 F.2d 13, 16 (1st Cir. 1978) (finding that EEOC evidence is entitled to "great deference" from the trial court); <u>see</u> <u>also</u> <u>Smith v. Universal Services, Inc.</u>, 454 F.2d 154 (5th Cir. 1972) (finding that an EEOC report had probative value).

In the case at bar, the MCAD and the EEOC found that the evidence presented to them "fail[ed] to establish . . . that an unlawful act of discrimination has been committed." (Docket Entry # 7, Att. # 1). Both organizations dismissed plaintiff's claim on the grounds that defendants did provide a reasonable accommodation for plaintiff's multiple sclerosis and because plaintiff was unable to prove that defendants fit the ADA's definition of an employer. (Docket Entry # 19, Att. # 2).

Although plaintiff's evidence to support the presence of the required number of employees is sufficient to avoid summary judgment, it falls significantly short of establishing a reasonable likelihood of success that BVH fits within the ADA's definition of an employer.  In sum, plaintiff does not meet her burden of showing that she has a reasonable likelihood of success on the merits of her claim.


CONCLUSION

In accordance with the foregoing discussion, the motion for summary judgment (Docket Entry # 48) is **DENIED.**  The motion for attachment (Docket Entry # 46) is **DENIED.**  Discovery is complete and the deadline to file a summary judgment motion set by this court on September 14, 2009, has passed.  This court will conduct a status conference on October 20, 2010, at 2:30 p.m. to set a trial date.


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge


30